UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

Christine Crandon and Vincent J. Crandon,
Debtor(s)

Chapter 7

Bky. No. 16-34616

**STATE OF TEXAS** )
) **ss.**
**COUNTY OF TARRANT** )

**AFFIDAVIT**

I, Veronica Sanchez, a bankruptcy specialist of Daimler Trust, declare under penalty of perjury that I have personal knowledge of the information set forth below, which is true and correct to the best of my knowledge, information, and belief.

1. This affidavit is based on the lease payment records of Daimler Trust as of January 23, 2017. These records are regularly maintained in the course of business and it is the regular practice to make and maintain these records. These records reflect the lease payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records and regularly use and rely upon them in the performance of my duties.

2. Daimler Trust owns the following (the "Vehicle"): 2013 Mercedes- Benz E350, VIN: WDDKK5KF5DF186869.

3. $49,130.25 is the outstanding balance under the lease.

4. $49,130.25 is the amount of the existing delinquency under the lease.

5. $29,925.00 is the fair market value of the Vehicle.

6. No appropriate insurance has been verified.

Further your affiant sayeth not.

Date: January 24, 2017

[signature]

Bankruptcy Specialist
Daimler Trust

Subscribed and sworn to before me on January 24, 2017.

[signature]

Notary

JENNIFER MONTIEL
Notary Public, State of Texas
My Commission Expires
August 22, 2018

NEW JERSEY
**Motor Vehicle Lease Agreement**

Mercedes-Benz Financial Services
The First Class Lease®

## Dates

The date of this lease is 12/03/12
The scheduled term of this lease is 36 months ("Lease Term")
The scheduled date this lease ends is 12/03/2015 ("Lease End")

## Parties

Lessor (Dealer) PRESTIGE MOTORS, INC.
Address 755 ROUTE 17 SOUTH
PARAMUS, NJ 07652
Telephone Number
Lessee VINCENT J CRANDON
Lessee
Lessee's Billing Address 14 JAMES BRITE CIRCLE
MAHWAH NJ 07430 BERGEN
(Include County)
Address of principal garage location, if different from Lessee's Billing Address (no P.O. Box)
(Include County)

## Type of Lease

XX Standard Lease ☐ Single Payment Lease

If the Single Payment Lease box is checked above, "Monthly Payments" or "First Monthly Payment" are replaced with the words "Single Lease Payment" throughout this lease and the word "Monthly" in section 6 j. below is deleted

## Vehicle Information

XX New ☐ Pre-owned VIN WDDKK5KF5DF186869

| Year | Make | Model | Body Style | Odometer reading |
|---|---|---|---|---|
| 2013 | MERCEDES | E350A | CV | 31 |

No. of Cylinders ____ XX Power Steering XX Automatic Transmission XX Power Brakes XX Air Conditioning

Prior Use of Vehicle. (If odometer reads in excess of 1,000 miles)
☐ Demonstrator ☐ Daily Rental XX Personal, Family or Household ☐ Unknown ☐ Not Applicable

Optional Factory Equipment
☐ CD Player ☐ Telephone
☐ Other (please specify)

Primary Intended Use
XX Personal ☐ Business, Commercial, or Agricultural Purposes
If no box is checked, or if the Personal box is checked, you agree to use the vehicle for personal, family or household purposes

**Unless otherwise specified, "lease" refers to this Motor Vehicle Lease Agreement; "vehicle" refers to the vehicle described above; "you", "your", and "yours" refer to the Lessee and any Co-Lessee, "we", "us", and "our" refer to the Lessor and, after the lease is assigned, to DAIMLER TRUST, or its successors and assigns; "Assignee" refers to DAIMLER TRUST or its successors and assigns. The "Vehicle Turn-in Fee" is a fee to cover the cost of disposing of the vehicle, commonly referred to as a disposition fee. "Pre-owned" refers to used vehicles. You agree to lease the vehicle from us on the terms and conditions provided in the front and back of the lease. The terms and conditions contained in this lease are made on behalf of Lessor and Assignee.**

## Consumer Leasing Act Disclosures

**1. Amount Due at Lease Signing or Delivery** (itemized below)* $ 5000.00

**2. Monthly Payments** Your first Monthly Payment of $ 927.20 is due on 12/03/12, followed by 35 payments of $ 927.20 due on the 3RD of each month. The total of your Monthly Payments is $ 33379.20

**3. Other Charges** (not part of your Monthly Payment)
a. Vehicle Turn-in Fee (if you do not purchase the vehicle) $ 595.00
b. N/A $ N/A
c. Total $ 595.00

**4. Total of Payments** (The amount you will have paid by the end of the lease) $ 38047.00

*** 5. Itemization of Amount Due at Lease Signing or Delivery**

**a. Amount Due at Lease Signing or Delivery:**

| | |
|---|---|
| 1 First Total Monthly Payment (includes sales/use taxes) | $ 927.20 |
| 2 Capitalized Cost Reduction | + $ 49.62 |
| 3 Acquisition Fee (if not capitalized) | + $ 795.00 |
| 4 Sales/Use Taxes | + $ 2343.49 |
| 5 Refundable Security Deposit | + $ N/A |
| 6 Title Fees | + $ N/A |
| 7 License Fees | + $ N/A |
| 8 Registration Fees | + $ 329.50 |
| 9 Tire Management Fee | + $ 7.50 |
| 10 Supplemental Titling Fee | + $ 262.69 |
| 11 Prior Lien or Lease Balance | + $ N/A |
| 12 N/A | + $ N/A |
| 13 DOC FEE | + $ 285.00 |
| 14 N/A | + $ N/A |
| 15 N/A | + $ N/A |
| 16 Total | = $ 5000.00 |

**b. How the Amount Due at Lease Signing or Delivery will be paid:**

| | |
|---|---|
| 1 Net Trade-in Allowance | $ N/A |
| 2 Rebates and noncash credits | + $ N/A |
| 3 Amount to be paid in cash | + $ 5000.00 |
| 4 N/A | + $ N/A |
| 5 Total | = $ 5000.00 |

**6. Your monthly payment is determined as shown below:**

| | |
|---|---|
| a **Gross Capitalized Cost:** The agreed upon value of the vehicle ($ 67956.47 ) and any items you pay over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) | $ 68725.47 |
| b **Capitalized Cost Reduction:** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost | - $ 49.62 |
| c **Adjusted Capitalized Cost:** The amount used in calculating your Base Monthly Payment | = $ 68675.85 |
| d **Residual Value:** The value of the vehicle at the end of the lease used in calculating your Base Monthly Payment | - $ 41231.56 |
| e **Depreciation and any amortized amounts:** The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term | = $ 27444.29 |
| f **Rent Charge.** The amount charged in addition to the Depreciation and any amortized amounts | + $ 5934.91 |
| g **Total of Base Monthly Payments:** The Depreciation and any amortized amounts plus the Rent Charge | = $ 33379.20 |
| h **Lease Payments:** The number of payments in your lease | ÷ 36 |
| i **Base Monthly Payment** | = $ 927.20 |
| j **Monthly Sales/Use Taxes** | + $ N/A |
| N/A | + $ N/A |
| l **Total Monthly Payment** | = $ 927.20 |

**7. Early Termination. You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.**

**8. *Excessive Wear and Use.*** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 36,000 miles (Mileage Allowance) for the term of this lease, at the rate of .25 per mile

**9. *Purchase Option at End of Lease Term.*** You have an option to purchase the vehicle ("as is") at the end of the lease term for $ 41231.56 plus a Purchase Option Fee of $ 150.00, plus a processing fee of $ N/A, plus all official fees and taxes. See the Purchase Option section on the back of this lease for more information

**10. *Other Important Terms.*** See your lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable

**11. Itemization of Gross Capitalized Cost**

| | |
|---|---|
| a Price of Vehicle | $ 67956.47 |
| b Approved Dealer Installed Equipment | $ N/A |
| c Service Contract | $ N/A |
| d Extended Warranty | $ N/A |
| e Credit Life and/or Credit Disability Premium | $ N/A |
| f Current Year Taxes, Title, Licenses, Registration | $ N/A |
| g Acquisition Fee | $ N/A |
| h Sales/Use Taxes | $ N/A |
| i Other Tax (describe) N/A | $ N/A |
| j Prior Lien or Lease Balance | $ N/A |
| k N/A | $ N/A |
| l STAR SERVICE PPM | $ 769.00 |
| m N/A | $ N/A |
| n N/A | $ N/A |
| o N/A | $ N/A |
| p Total Gross Capitalized Cost | $ 68725.47 |

**12. Estimated Official Fees and Taxes**

The total estimated amount you will pay for official fees, license, title and registration fees, and taxes over the term of your lease, whether included with your Monthly Payment or assessed otherwise is $ 3594.68. This is an estimate and the actual total of Official fees and Taxes may be higher or lower than this estimate. The actual total of Official Fees and Taxes depends on the rates in effect, the value of the vehicle and the garage location of the vehicle at the time the fees and taxes are assessed

**13. Mileage Allowance**

The odometer reading in the Vehicle Information section of this lease provides the number of miles existing on the vehicle when you entered this lease ("Existing Miles"). Your Mileage Allowance provided in section 8 refers to miles driven during the Lease Term and does not include the Existing Miles

If your Mileage Allowance in section 8 above is greater than 36,000 "Base Mileage Amount", you have chosen to purchase additional miles for your Mileage Allowance determination. If you have purchased additional miles, then at Lease End, except as provided below, you will be eligible for a credit or refund of .20 per mile for any unused additional miles between the Base Mileage Amount and your Mileage Allowance over the term of the lease. You will not receive a refund if the vehicle is destroyed or stolen, you are in default, you purchase the vehicle, or the refund is less than $1

**14. Missing Records**

If you do not return the vehicle's maintenance booklets as provided in the Maintenance section of this lease, you will owe a missing records fee in the amount of $ N/A

**15. New and Pre-owned Vehicle Warranty**

If the vehicle is new, it is covered by a standard new vehicle warranty from the manufacturer

If the vehicle is pre-owned, it is not covered by a warranty unless indicated by a check in the corresponding box below

☐ Remainder of standard new vehicle warranty from manufacturer
☐ Pre-owned vehicle warranty from manufacturer
☐ Pre-owned warranty from other third-party provider

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties

**We lease the vehicle to you "AS IS". EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE, AND UNLESS PROHIBITED BY LAW, WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VEHICLE'S (OR ANY PART OR ACCESSORY THEREOF) CONDITION, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE AND WE MAKE NO OTHER REPRESENTATION OR WARRANTY WHATSOEVER.**

**16. Optional Insurance and Other Products**

You are not required to buy any of the optional insurance or other products listed below to enter into this lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless you are accepted by the provider. By your initials below, you agree that you have received a notice of the terms and cost of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer). These coverages are not provided by the Lessor. You must pursue all matters related to these coverages, including refunds, through the provider. The terms and conditions for these coverages are provided in a separate contract, which you acknowledge that you have received and read

If the price of these coverages is also included in the itemization of Gross Capitalized Cost, it will be included in the Base Monthly Payments. If not, you have paid for the coverages in full upon signing this lease

Unless you receive written notification otherwise, credit life and credit disability insurance end on the original due date of the last payment due under the lease

☐ Credit Life Provider N/A
Initial Coverage $ N/A Prem. $ N/A
Lessee/Co-Lessee Initials

☐ Credit Disability Provider N/A
Maximum Mo. Benefit $ N/A Prem. $ N/A
Lessee/Co-Lessee Initials

☐ Service Agreement Provider N/A
Coverage is for N/A months or N/A miles, whichever happens first
Premium or charge $ N/A Lessee/Co-Lessee Initials

☐ Extended Warranty Provider N/A
Coverage is for N/A months or N/A miles, whichever happens first
Premium or charge $ N/A Lessee/Co-Lessee Initials

BEST COPY

### ADDITIONAL DISCLOSURES REQUIRED BY NEW JERSEY LAW

**Other Lease Information. MANUFACTURER'S SUGGESTED RETAIL PRICE (MSRP). $** 69115.00 **Total Cost of Lease:** The total cost of this Lease, if you do not default and you exercise the purchase option at the end of the Lease Term, is $ 78833.56. This amount is figured by adding the Amount Due at Lease Signing or Delivery (minus the first monthly payment and the refundable security deposit, see #5 above), the total of Monthly Payments (see #2 above) and the amounts imposed on you at the end of the Lease Term. Because this disclosure is based on certain assumptions and does not include all costs (such as insurance), your actual total cost of this Lease may differ

## Notices/Signatures

**NOTICE TO LESSEE: (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.**

**LESSEE**
**By signing below, you acknowledge that:**
- **This lease is completely filled out;**
- **You have read this entire lease carefully and agree to all of its terms, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES ON THE BACK OF THIS LEASE;**
- **You have received a completed copy of this lease; and the Lessor may assign all right, title, and interest in this lease, vehicle and Guaranty to anyone.**

**NOTICE: THE LESSEE AND THE LESSOR SHALL BE ENTITLED TO REVIEW THE CONTRACT FOR ONE BUSINESS DAY BEFORE SIGNING THE CONTRACT.**

**MOTOR VEHICLE LEASE AGREEMENT**

X [signature] Lessee VINCENT J CRANDON    X ____ Lessee
By ____ By ____
Title ____
Driver's license number/State    Driver's license number/State

**LESSOR SIGNATURE AND ASSIGNMENT**

By signing below, the Lessor (or if Daimler Trust is Lessor, through its attorney-in-fact) accepts the terms and conditions of this lease. If Lessor is not Daimler Trust, Lessor assigns all right, title and interest in this lease, vehicle and Guaranty to Daimler Trust, subject to the terms and conditions of the Retail Installment Contract and Lease Program Agreement with or assigned to Mercedes-Benz Financial Services USA LLC and Lessor

X [signature] Lessor (or Attorney-in-Fact)    BUSINESS MANAGER Title

**GUARANTY**

The Guarantor(s) named below absolutely and unconditionally guarantee(s) payment of all amounts owed under this lease. This means if the lessee(s) fail(s) to pay any money owed, guarantor(s) will pay it. All Guarantor(s) shall be jointly and severally liable and agree that this guaranty shall not be affected by any changes to this lease. Guarantor(s) also agree to be liable for all fees and costs, including attorneys' fees, that the Lessor incurs in enforcing this lease or guaranty

Guarantor(s) has/have received a completed copy of this lease and guaranty at the time of signing

X ____ Guarantor    X ____ Guarantor
Print Name    Print Name
Address    Address
Address N/A    Address

***NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.***

***THE ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE SIDE ARE A PART OF THIS LEASE.***

**AUTO PAY DEBIT AUTHORIZATION**

Effective on the same date as my lease or retail installment contract ("Agreement"), I (hereafter "I", "me" or "my") hereby authorize Mercedes-Benz Financial Services USA LLC and its successors and assigns ("MBFS") to initiate recurring electronic debit entries or effect recurring charges by any other commercially accepted means to the account listed below at the designated financial institution for the amount exceeding up to $100 of the regularly scheduled payment under the Agreement. I agree to provide all information where indicated below, or deliver a blank check with this authorization containing such information and in that event the information on the check shall be deemed a part of this authorization. I authorize the designated financial institution to honor such debit entries to the banking account number and hereby represent that, in the event the bank account is in the name or ownership different from mine, I am authorized to initiate debit entries from that account. I may cancel this authorization by (a) sending a written cancellation request by regular mail to MBFS Customer Service Center - Auto Pay Department, P.O. Box 685, Roanoke, TX 76262, or (b) sending an email requesting cancellation addressed to autopaycancel@daimler.com. This authorization will remain in force until I cancel it as noted above, MBFS cancels it in writing, or all Agreement obligations are satisfied. If payment is due on a bank holiday or a weekend, it will be deducted on the next business day. Lease payments will be deducted on the scheduled due date until the last lease payment due date. Retail installment contract payments will be deducted on the scheduled due date until the next to last payment due date; I will receive a separate bill for the last payment

BEST COPY

## Operation and Maintenance

### 17. Maintenance

[illegible]

### 18. Prohibited Uses of Vehicle

[illegible]

## Insurance

### 19. Vehicle Insurance

[illegible]

### 20. Total Vehicle Loss/Gap Waiver

[illegible]

## End of Lease

### 21. Purchase Option

[illegible]

### 22. Return of Vehicle

[illegible] Monthly Payments if the Lease Term is 60 months or more

**Calculation B:** (1) All Monthly Payments not yet due under the lease, **plus** (2) All unpaid Monthly Payments that have accrued up to the date of termination, **plus** (3) All other unpaid amounts, due under the lease, **plus** (4) All official fees and taxes related to the lease or the vehicle in connection with lease termination, **plus** (5) The Vehicle Turn-In Fee, **plus** (6) The amount, if any, for excess wear and use, which includes a charge for excess mileage

2) **Single Payment Lease - Early Return of Vehicle Charge.** If this is a Single Payment Lease, as indicated on the front of this lease, your Early Return of Vehicle Charge is determined by Calculation C or Calculation D, below, whichever is less

**Calculation C:** (1) All unpaid amounts due under the lease, other than excess wear and use and mileage charges, **plus** (2) All official fees and taxes related to the lease or the vehicle in connection with lease termination, **plus** (3) The Vehicle Turn-In Fee, **plus** (4) Any positive amount determined by subtracting the vehicle's then Fair Market Wholesale Value from the Residual Value, **less** (5) 88.5% of the unearned rent charge calculated on a constant yield basis if the Lease Term is 1-59 months or 85.1% of the unearned rent charge calculated on a constant yield basis if the Lease Term is 60 months or more

**Calculation D:** (1) All unpaid amounts due under the lease, **plus** (2) All official fees and taxes related to the lease or the vehicle in connection with lease termination, **plus** (3) The Vehicle Turn-In Fee, **plus** (4) The amount, if any, for excess wear and use, which includes a charge for excess mileage

3) **Fair Market Wholesale Value.** The Fair Market Wholesale Value will be determined in one of the following ways (a) in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles, (b) by disposing of the vehicle in a commercially reasonable manner, (c) within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the vehicle that could be realized at sale, the appraised value shall be a binding determination of the Fair Market Wholesale Value, (d) if the vehicle is subject to a total loss due to collision, destruction or theft as determined by us, the Fair Market Wholesale Value will equal (i) the amount of any proceeds we receive from your insurance, plus (ii) the amount of our deductible under such insurance if that amount has been paid to us, if there are no insurance proceeds, the Fair Market Wholesale Value will be zero

### 23. Default

a. **Early Termination by Us.** We may terminate this lease at anytime if you are in default (see section 23 b.) and you must pay us your Early Termination Liability. Your Early Termination Liability equals all expenses related to recovering, obtaining, storing and preparing for sale and selling the vehicle, including, but not limited to, reasonable attorney fees, collection costs, and court costs, to the extent not prohibited by law, **plus**: (1) if this is a Standard Lease as indicated on the front of this lease, the amount determined by Calculation A in section 22 b., or (2) if this is a Single Payment Lease as indicated on the front of this lease, the amount determined by Calculation C in section 22 b.

b. **Events of Default.** You will be in default if (1) you fail to make any payment when due, including any amount required to be paid under the sections of this lease entitled RETURN OF VEHICLE, Scheduled Termination or Early Termination by you,

## End of Lease (continued)

(3) you break any promise or conditions in the lease or any other agreement with [illegible] anything that invalidates your [illegible] we specify, (5) you gave false or misleading information to us on your credit application or other document, (6) you die (and your surviving spouse does not continue to make payments due in accordance with the lease terms), are declared incompetent, become insolvent, a bankruptcy petition is filed by or against you, or you dissolve active business affairs; (7) the vehicle is seized, or levied upon by any government or legal process, (8) the vehicle is destroyed, abandoned, stolen or damaged beyond repair; (9) your driver's license expires or is suspended, revoked, or canceled, or (10) anything else happens that we reasonably believe in good faith endangers the vehicle or your ability to pay

**Remedies for Default.** If you are in default, you will owe your Early Termination Liability provided in section 23 a. and we may take any or all of the following actions (1) terminate this lease and your rights to the vehicle, (2) take possession of the vehicle without prior demand, unless notice or demand is required by law, (3) take reasonable action to prevent the default or our loss, (4) require you to return the vehicle and any related records, (5) make a claim for insurance or service contract benefits or refunds available on your default and apply such amount to the amount you owe, or (6) use any remedy we have at law or in equity. You agree to reimburse us for any amounts we choose to pay under this lease that you are required to pay, including amounts we pay to cover your default or enforce our right to the vehicle. You agree that in the event we hire an attorney to collect any amount due or enforce any right or remedy under this lease, you shall pay our attorney fees and court costs.

If we take possession of the vehicle as provided in section 23 c 2, we may take any personal property in the vehicle. We will hold the personal property for you for 20 days. If you do not pick up the property within that time, we may dispose of it in any manner

### 24. Interest on Unpaid Amounts

You understand and agree that upon termination of this lease for any reason, if you do not pay us any amount you owe us upon our demand, you will owe us, in addition to the amount unpaid, interest on such amount at the annual rate of 6% (or such lesser maximum rate as applicable law permits)

## Additional Information

### 25. Assignment and True Lease

You understand that this is a true lease and that you do not have equity or other ownership rights in the vehicle unless you purchase it from us. You may not assign, sell, sublease or arrange an assumption of your interests or rights under this lease or in the vehicle without our written permission. You understand that we may assign our rights and obligations under this lease at anytime or to anyone, including Daimler Trust, without first notifying you. You agree and grant us permission to provide information about you, the vehicle or this lease to our affiliates at any time, subject to the terms of the Assignee's Privacy Policy. Lessor and its employees are not agents of Assignee and have no authority to obligate Assignee. Mercedes-Benz Financial Services USA LLC ("MBFS"), as the servicing agent for Daimler Trust, has the power to act on Daimler Trust's behalf to administer, enforce and defend this lease. You agree to pay all amounts due under this lease to MBFS or as otherwise directed by MBFS

### 26. Late Charges/Returned Payment and Other Fees/Fines and Tickets

If we do not receive the entire amount of your Monthly Payment within 15 days after it is due, you will pay us a late fee of **$50** or **5%** of the unpaid amount whichever is less. If any check, draft, order, or other payment instrument is returned to us for any reason, or if any authorized electronic debit is not paid, you will pay us a fee of **$25**. You agree to pay all fines and tickets imposed on the vehicle or its driver. If you do not pay such fines or tickets and we pay, you will reimburse us, and pay us an administration fee of **$25** to the extent permitted by law. Unless prohibited by applicable law, you agree to pay a processing fee in connection with any payment you make to us by authorizing us, or a bill payment service, orally or in writing, to write a check on your behalf, use automated clearing house procedures, or use any other commercially accepted practice to make your payment from your checking or other account. The amount of the processing fee will be the amount you agree to, orally or otherwise, at the time you authorize us or the bill payment service to process your payment

### 27. Indemnification

You will defend, indemnify and hold harmless Lessor and Assignee from and against any loss and all losses or damages to the vehicle and from all claims, losses, suits, actions, liabilities, costs and expenses (including, but not limited to reasonable attorney fees) related to and/or against the use, operation or condition of the vehicle

### 28. Notices/General

We will send notices and correspondence to you at the billing address you provided on this lease. If this address or the garage address changes, you will inform us, in writing, within **30** days of the change. **To the extent permitted by law, you give us permission to monitor and record any telephone conversation between you and us.** Section headings in this lease are for convenience of reference only and are not part of the lease for any other purpose

As part of a like-kind exchange program, the Assignee has engaged MBF Account Services LLC as a qualified intermediary. Dealer is hereby notified that the Assignee has assigned to MBF Account Services LLC its rights (but not its obligations) in the agreement for the purchase of this vehicle

In the event the Lessee purchases the vehicle, Lessee is hereby notified that the Assignee has assigned to MBF Account Services LLC its rights (but not its obligations) in the agreement for the sale of this vehicle

### 29. Refundable Security Deposit

The Refundable Security Deposit may be used to pay all amounts that you fail to pay under this lease or to satisfy any remedy for Default. Any portion of the Refundable Security Deposit not applied to amounts that you owe will be returned to you after termination of this lease and our determination that the amounts you owed at the end of this lease have been paid. Even if we have refunded to you all or any portion of the Security Deposit, you are still responsible for amounts due and owing after termination of this lease such as personal property tax. You may not apply any portion of the Security Deposit to a Monthly Payment. You will not earn interest on the Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Security Deposit will neither be paid to you nor applied to reduce your obligations under this lease

### 30. Modification

Any change to this lease must be in writing and signed by Assignee, however, if permitted by law, extensions, deferral, or due date changes may be agreed to orally by you and Assignee and we will send you written confirmation

### 31. Enforceability

Each person who signs this lease is jointly and severally liable under this lease and for all payments, whether or not we try to collect from the other signers. We do not have to repossess the vehicle to exercise any other rights. We do not give up any of our rights by delaying or failing to exercise them. This lease is subject to the laws of the state where it was signed. This lease is the entire agreement between you and us and is binding on anyone who assumes our interest in it. We are not bound by any statements or representations made by agents or sales people if not contained in this lease. We make no promises regarding any tax benefits to you from leasing. If we waive any provision of this lease or if any provision in this lease is held to be unenforceable, void, illegal or otherwise against applicable law, the other provisions shall survive and be enforceable separately from any voided provisions, unless otherwise provided in this lease

### 32. Delivery

You accept delivery of the vehicle described in this lease and acknowledge that it is equipped as described, is in good operating order and condition, and has the odometer reading recorded on the front of the lease in the Vehicle Information section

### 33. Payment Obligations

You may not change or stop any lease payments for **any reason**, even if you do not receive an invoice, and even if the vehicle is stolen, destroyed, seized by the government or a court, experiences mechanical problems, or does not satisfactorily perform. If you experience mechanical or other difficulties with the vehicle, you will pursue these issues with the manufacturer

### 34. Taxes, Registration and Titling

You agree to title, register and license the vehicle in the state in which it is primarily located. You are aware that the vehicle is to be titled in our name. You must request any power of attorney required from us to title, register, or license the vehicle. You agree to promptly pay all title, registration, license, inspection, testing, personal property taxes, and other fees, taxes and charges imposed by government authorities in connection with the vehicle, this lease, or any amounts due or payable arising from this lease. We may pay any or all license, title and registration costs, fees, charges and taxes relating to the vehicle or this lease that you do not pay and you agree to reimburse us for all such amounts. We have no duty to account to you for the fees, charges, or taxes we pay. You are responsible for any fines, penalties, and/or interest if you do not pay a bill when it is due. If the vehicle is primarily located in a state other than a state that bills you directly for personal property tax, we will invoice you for personal property tax, if applicable, after we have been billed by the taxing authority. During the term of this lease, you agree to pay the invoice amount on or before your next Monthly Payment due date. We may receive some bills after this lease has ended. If this lease has ended, you agree to pay us within 10 days of being invoiced, if this is a Standard Lease, or within 10 days of being invoiced if this is a Single Payment Lease. If the vehicle is primarily located in a state that bills you directly for personal property tax, you will pay the state DIRECTLY for the personal property tax owed on the vehicle. If you do not pay, and we pay the personal property tax, you will reimburse us the cost of the personal property tax and any penalties incurred

### 35. Security Interest

You grant us a security interest, to the extent permitted by law, in the following, to secure performance of your lease obligations (1) proceeds of any insurance with respect to the vehicle, (2) proceeds of any service contract purchased with this lease, and (3) any unearned premiums or refunds of any of the foregoing. **You will not allow any lien or encumbrance to attach to the vehicle.**

If this is a standard lease as indicated on the front of this lease, Daimler Trust grants a security interest in the vehicle to Daimler Title Co., as collateral agent, pursuant to the Collateral Agency Agreement dated as of August 1, 2007, as amended

### 36. Power of Attorney

You appoint us, to the extent permitted by law, through our appointed officer or employee, as your attorney-in-fact to act on your behalf in any insurance/coverage matter relating to the vehicle, including, but not limited to, the power to endorse insurance/coverage proceeds checks or drafts on your behalf, and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other optional insurance/coverage financed under this lease, and apply the refunded premium or cost to your outstanding balance if you are in default. Your grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations you owe under this lease are paid in full.

## Important Arbitration Disclosures

### 37. Arbitration

**The following Arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.**

1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court
2. If such dispute is arbitrated, you and we will give up the right to a trial by a court or a jury trial
3. You agree to give up any right you may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and you agree to give up any right you may have to consolidate your arbitration with the arbitration of others
4. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit
5. Other rights that you and/or we would have in court may not be available in arbitration

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this lease, Arbitration section or the arbitrability of any issue), between you and us or any of our employees, agents, successors or assigns, which arises out of or relates to a credit application, this lease, or any resulting transaction or relationship arising out of this lease shall, at the election of either you or us, or our successors or assigns, be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. Whoever first demands arbitration may choose to proceed under the applicable rules of the National Center for Dispute Settlement, 43230 Garfield Road, Suite 130, Clinton Township, MI 48038 or the internet at http://www.ncdsusa.org/, or any other organization that you may choose subject to our approval

Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. Unless the rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. If you demand arbitration first, you will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125, and we will pay any additional initial filing fee or case management fee. We will pay the whole filing fee or case management fee if we demand arbitration first. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent you from requesting that the applicable arbitration entity reduce or waive your fees, or that we voluntarily pay an additional share of said fees, based upon your financial circumstances or the nature of your claim

This lease evidences a transaction involving interstate commerce. Any arbitration under this lease shall be governed by the Federal Arbitration Act (9 USC 1, et seq.). Judgment upon the award rendered may be entered in any court having jurisdiction

Notwithstanding this provision, both you and Lessor and Lessor's successors and assigns retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbitrator. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court

If any clause within this Arbitration section, other than clause 3 or any similar provision dealing with class action, class arbitration or consolidation, is found to be illegal or unenforceable, that clause will be severed from this Arbitration section, and the remainder of this Arbitration section will be given full force and effect. If any part of clause 3 or any similar provision dealing with class action, class arbitration or consolidation is found to be illegal or unenforceable, then this entire Arbitration section will be severed and the remaining provisions of this lease shall be given full force and effect as if the Arbitration section of this lease had not been included in this lease

## VEHICLE LOCATION CONSENT

**For Mercedes-Benz Vehicles.** Notwithstanding anything in the Digital Tele Aid Subscriber Agreement for Mercedes-Benz Vehicles (the "Subscriber Agreement") or any other similar agreement or document provided or made available to you in connection with your Mercedes-Benz vehicle, and except as prohibited by applicable law, if you are in default (as defined herein) and your vehicle has a data recorder or the capability to report the vehicle's location through your use of the Tele Aid services or otherwise, you consent and authorize us and our agents, representatives, and affiliates including Mercedes-Benz USA, LLC ("MBUSA") and any service provider acting with it or on its behalf, including ATX Group, Inc. ("ATX") and Hughes Telematics, Inc. ("HTI"), to (a) obtain data from the vehicle including the location of the vehicle, (b) release the data to us, MBUSA, ATX, HTI or their agents, representatives, and affiliates and (c) use such data for the purpose of locating the vehicle, including with respect to the repossession of it. You agree that notwithstanding anything to the contrary in the Subscriber Agreement, MBUSA and its agents, representatives, and affiliates (including but not limited to ATX and HTI) are intended to be protected by the consent you are giving in this document, and that those parties are and will be relying upon such consent as releasing them from any potential liability for such use of any data. You also agree that your consent will supersede any past or future sending of notice by you under section 18 of the Subscriber Agreement, allowing you to request that certain information retrieved from your vehicle's sensing or diagnostic modules not be used (or any other comparable section of the Subscriber Agreement or other document), and that your consent shall be fully enforceable and effective notwithstanding your sending any such notice, or exercising any such right

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, you, on behalf of you, your successors and your assigns, intentionally, knowingly and irrevocably hereby release and discharge us and our affiliates, officers, directors, managers, members, insurers, shareholders, employees, attorneys, agents, representatives, predecessors, successors, assigns and all others acting by, through, under or in concert with them (the "Releasees") including, without limitation, MBUSA and any service provider acting on MBUSA's behalf, from all claims, liabilities, obligations, damages, losses, costs, expenses, debts, liens, suits, actions and/or causes of action, at law or in equity, of every kind, character and nature whatsoever, whether known or unknown, suspected or unsuspected, contingent or fixed, direct or indirect, which have existed or may have existed, or which do exist or which hereafter can, shall or may exist in any way based upon or related to the subject matter of this consent. This includes, in the case of MBUSA, ATX, HTI and anyone acting with them, any claim based on an allegation that activities to locate or repossess your vehicle as consented to herein were undertaken without you being in default. You represent, warrant and covenant not to sue, or commence an arbitration or other proceeding against any of the Releasees, to enforce any charge, claim or cause of action released herein.

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK

# CERTIFICATE OF TITLE

| PREFIX | IDENTIFICATION NUMBER | SUFFIX | YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|---|---|---|
| | WDDKK 5KF5D F1868 69 | | 2013 | M B | E-C | CON |

| TYPE OF TITLE | DUPLICATE NO | GVW/WGT/LGTH | COLOR/MTL/HP | DEALER I.D. | AXLES/PROP | FUEL |
|---|---|---|---|---|---|---|
| STANDARD | | 8 | SL | 35480N | 2 | 0 |

| FEE | ISSUE DATE | VIN REPLACEMENT | MILEAGE | STATUS |
|---|---|---|---|---|
| 110.00 | 12-18-2012 | | 31 | A |

OWNER(S)
DAIMLER TRUST
13650 HERITAGE PKWY 1ST FL
FT WORTH TX 76177

F-FLOOD S-SALVAGE
P-POLICE T-TAXI
L-LEMON LAW
A-ACTUAL MILEAGE
N-NOT THE ACTUAL MILEAGE
M-MILEAGE EXCEEDS THE MECHANICAL LIMITS

NUMBER OF OWNERS 1

NUMBER OF LIENHOLDERS 1

OWNER DL/CC

I, CHIEF ADMINISTRATOR OF THE MOTOR VEHICLE COMMISSION, OF THE STATE OF NEW JERSEY, DO HEREBY CERTIFY THAT EVIDENCE OF PURCHASE OF OWNERSHIP, IN COMPLIANCE WITH THE LAWS OF THE STATE OF NEW JERSEY, OF THE DESCRIBED ARTICLE, HAS BEEN RECORDED AND FILED WITH ME, AND I DO HEREBY ISSUE THIS CERTIFICATE OF OWNERSHIP SUBJECT TO SECURITY AGREEMENT OR LIEN, IF ANY AS STATED.

SIGNATURE

AL630436

State of New Jersey
MOTOR VEHICLE COMMISSION

SECOND LIENHOLDER
DATE

SECOND RELEASE
LIEN RELEASED BY:
SIGNATURE ____
TITLE ____ DATE ____

FIRST LIENHOLDER
DATE 12-18-2012
DAIMLER TITLE CO
13650 HERITAGE PKWY 2 FL
FT WORTH TX 76177

FIRST RELEASE
LIEN RELEASED BY:
SIGNATURE ____
TITLE ____ DATE ____

ISM/SS 1 (R9/10)

ALTERATION OR ERASURE VOIDS THIS TITLE. KEEP IN SAFE PLACE

VOID IF ALTERED

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK